IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| HOLLIS JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-3254-CV-S-DW |
| | ) | |
| WINDSOR REPUBLIC DOORS | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Defendant Windsor Republic Door's Motion for Summary Judgment (Doc. 22). In his Complaint, Plaintiff, Hollis Jackson, alleges an unlawful retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Missouri Human Rights Act, Mo. Rev. Stat. 213.010 *et seq.*; and Missouri Common Law. After careful review of the briefs and controlling case law, the Court grants the motion.

I.  BACKGROUND

Hollis Jackson ("Jackson") was initially employed by Republic Door, which was subsequently acquired by and merged with Windsor Door in late 2003. The merged entity, Windsor Republic Door, hired Hollis Jackson as a Regional Sales Manager based in Springfield, Missouri to sell commercial and residential doors. Republic and then Windsor Republic suffered from declining sales and had gone from a $45 million company to a $20 million company in the preceding four years. According to Jackson, the company was "withering on the vine."

In January 2003, before the merger, Jackson sent an anonymous email to management complaining of crude jokes and comments made by Tony Gurgiolo, VP Sales and Marketing for Republic Door, during the national sales meeting held in Jackson, Tennessee. Apparently, the

company investigated the source of the email and at some point confronted Jackson believing he had authored the email. Jackson denied sending the email and never told anyone at Republic that he sent the email. No action was taken by Republic Door against Jackson as a result of the January 2003 email, nor did this incident prevent the merged company, Windsor Republic, from hiring Jackson in late 2003.

According to Jackson, he was hired and based in Springfield primarily to service D.H. Pace. D.H. Pace was Jackson's largest single customer, constituting at least half of Jackson's total annual sales, and was Windsor Republic Door's largest customer in the western United States. In March 2004, Jackson lost D.H. Pace as a customer.

In June 2004, Jackson attended the National Sales Meeting held at the corporate offices in Little Rock, Arkansas. On June 15, 2004, after participating in a meeting session, Jackson orally complained to Harry Lewis, Sales Manager for the Western United States, that he strongly objected to bigoted comments made by Windsor Republic's owner, Al Seimer, during the meeting.[1] As Sales Manager, Harry Lewis was above Jackson in the corporate hierarchy, however he was not Jackson's direct supervisor. Jackson stated that Lewis did not respond to his complaint and "he just kind of, you know, looked at me." Later that same day, Jackson was terminated by Bob Strahan, Vice President of Sales, who stated that Jackson's termination was due to a consolidation of sales territories and the elimination of his position.

On June 18, 2004, Jackson sent a letter to Larry Land, Windsor Republic's Human Resources Manager, complaining of the inappropriate comments by Al Seimer at the national

---

[1] Jackson alleges that in response to a question about prospective sales opportunities in New York City, Al Seimer said "Just forget about those Jews in New York City. You're not gonna sell them anything, and they're sure as hell not gonna let you make a dime."

sales meeting. Jackson also sent a letter to Larry Land asking why his employment had been terminated. On June 22, 2004, Land responded by letter stating that Jackson's employment had been terminated on June 15, 2005 for the reasons stated by Mr. Strahan. The letter also included a proposed severance and release agreement. Jackson did not sign or otherwise accept the severance and release.

II.     STANDARD OF DECISION

Summary judgment is appropriate if there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 850 (8th Cir. 2005); Fed R. Civ. P. 56(c). "The burden of demonstrating that there are no genuine issues of material fact rests on the moving party." Winthrop Resources Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 468 (8th Cir. 2004). The Court reviews the evidence and draws reasonable inferences in the light most favorable to the non-moving party. See Horn v. Univ. of Minn., 362 F.3d 1042, 1045 (8th Cir. 2004). However, the non-moving party must present evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in his favor. Rodgers, 417 F.3d at 850.

Summary judgment is used sparingly in the context of employment discrimination and/or retaliation cases where direct evidence of intent is often difficult or impossible to obtain. Haas v. Kelly Services, Inc., 409 F.3d 1030, 1034-35 (8th Cir. 2005). However, no separate summary judgment standard exists for discrimination or retaliation cases and such cases are not immune from summary judgment. See Berg v. No-rand Corp., 169 F.3d 1140, 1144 (8th Cir. 1999) ("there is no 'discrimination case exception' to the application of Fed. R. Civ. P. 56, and it remains a useful pretrial tool to determine whether or not any case, including one alleging

3

discrimination, merits a trial").

   III.   DISCUSSION

      A.   Statutory Claims

Counts I and II of Jackson's Complaint allege that he was subjected to an unlawful retaliatory termination in violation of Missouri and Federal statutory law. Claims of retaliation under Title VII and the MHRA are analyzed under the same standards. Finley v. Empiregas, Inc., 975 F.2d 467, 473, (8th Cir. 1992); see also Midstate Oil Co. v. Missouri Comm'n on Human Rights, 679 S.W.2d 842, 845-46 (Mo. banc 1984).

In cases lacking direct evidence of retaliation, the Court follows the familiar burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to determine whether summary judgment is warranted. Lewis v. St. Cloud State Univ., 467 F.3d 1133, 1138 (8th Cir. 2006). The first step is to determine whether Jackson has established a *prima facie* case of retaliation by offering some evidence demonstrating that he took part in protected activity, he was subjected to an adverse employment action, and a causal connection exists between the two. Thompson v. Bi-State Dev. Agency, 463 F.3d 821, 826 (8th Cir. 2006). The plaintiff's burden at the *prima facie* stage of the analysis is not onerous, and "[a] minimal evidentiary showing will satisfy this burden of production." Rodgers, 417 F.3d at 850. Once the plaintiff has established a *prima facie* case, the employer must articulate a legitimate, non-retaliatory reason for the adverse action. Buettner v. Arch Coal Sales, Co., 216 F.3d 707, 714 (8th Cir. 2000). And finally, the plaintiff must prove that the proffered reason is prextual and the real reason was retaliatory. The ultimate burden of proving unlawful retaliation remains with the plaintiff throughout the burden shifting framework. Rath-Maston v. NMH Hospitals, Inc., 133 F.3d 1104, 1107-8 (8th Cir.

1998).

For the purposes of summary judgment, the Court will assume that Jackson has established a *prima facie* case.[2] This case turns on whether Jackson has established that Windsor Republic's proffered reason for his termination is pretextual. To survive summary judgment, Plaintiff must to point to some evidence in the record that the employer's proffered reason is pretextual. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999). The Eighth Circuit has repeatedly held that temporal proximity between the complaint and the adverse employment action alone is insufficient to present a genuine factual issue on retaliation. See, e.g., Smith v. Allen Health Systems, Inc., 302 F.3d 827 (8th Cir. 2002). In this circuit, temporal proximity alone can be sufficient to establish a genuine issue as to the causation element of the *prima facie* case, but additional evidence is required to establish a genuine issue as to pretext. Sprenger v. Federal Home Loan Bank, 253 F.3d 1106, 1113-14 (8th Cir. 2001).

Here, Windsor Republic has come forward with evidence of a reason other than retaliation for Jackson's discharge—Jackson's loss of a major client and the consolidation of sales regions. Neither party disputes that Windsor Republic's sales were in decline. Jackson admits that he was aware of this decline and was aware that the sales crisis was likely to lead to changes within the corporate structure. Jackson also admits that he was hired and based in Springfield to service D.H. Pace and that he lost that account in March 2004. Jackson was subsequently terminated in June 2004—less than three months after the loss of his primary sales account. At the time of his termination, Bob Strahan informed Jackson that his position was

---

[2] Although Defendant raises persuasive arguments to the contrary, the Court recognizes that the *McDonnell-Douglas* burden shifting framework requires "minimal" evidence to establish a *prima facie* case.

5

being eliminated and sales districts were to be consolidated.[3] Windsor Republic has consistently relied on the sales-based rationale for Jackson's termination and at no time has Windsor Republic offered a different reason. See Kobrin v. Univ. of Minn., 34 F.3d 698, 703 (8th Cir. 1994) ("Substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext.").

Jackson's evidence of retaliatory motive is limited to the timing and location of his termination—he was fired the same day as his oral complaint to Harry Lewis and he was fired at the national sales meeting. Jackson has failed to identify any other evidence in the record creating a genuine dispute about the legitimacy of Defendant's stated sales-based explanation for its decision to terminate him. Although this Court must draw all reasonable inferences in the light most favorable to Plaintiff, it is bound by the Eighth Circuit law stating that mere temporal proximity between the complaint and the adverse employment action does not create an inference of pretext. Thus, as there is no genuine issue for trial, summary judgment is appropriate on Counts I and II of the Complaint.

      B.     Common Law Claim

Jackson's remaining state law claim: Count III - Violation of Missouri Common Law, also fails because the Missouri Human Rights Act and Title VII preempt claims for wrongful discharge based on violation of public policy. See Trapp v. Von Hoffmann Press, Inc., 2002 WL 1969650 (W.D. Mo. 2002); Nichols v. American National Ins. Co., 945 F. Supp. 1242, 1246 (E.D. Mo. 1996) (holding that Title VII of Civil Rights Act of 1964 preempts plaintiff's claim for

---

[3] Jackson argues that Defendant has failed to establish the absence of material fact because Land's affidavit is not based on his personal knowledge. The Court relies on Jackson's own admissions and deposition regarding Windsor Republic's reason for termination.

wrongful discharge based on violation of public policy); Osborn v. Professional Serv. Indus., Inc., 872 F. Supp. 679 (W.D. Mo. 1994) (holding that Missouri Human Rights Act and Age Discrimination in Employment Act preempted wrongful discharge claim, where employee was terminated on basis of age); Wyrick v. TWA Credit Union, 804 F. Supp. 1176 (W.D. Mo. 1992); Kramer v. St. Louis Regional Health Care Corp., 758 F. Supp. 1317 (E.D. Mo.1991) (dismissing plaintiff's wrongful discharge claim, because it was duplicative of Missouri Human Rights Act).

IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment on Counts I, II and III in the Complaint. The Clerk of the Court is directed to enter final judgment in favor of Defendant on all counts.


Date: March 23, 2007                              /s/ DEAN WHIPPLE
                                                  Dean Whipple
                                                  United States District Court

7

Case 6:05-cv-03254-DW   Document 31   Filed 03/23/07   Page 7 of 7